```
                    UNITED STATES DISTRICT COURT
                        DISTRICT OF NEW JERSEY
```

ANGEL LISBOA,                           1:18-cv-08744-NLH-JS

        Plaintiff,          **OPINION**

   v.

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,
JOSEPH PIZARRO, NJ FAMILY
CARE, and STATE OF NEW
JERSEY,

        Defendants.

**APPEARANCES**:

ANGEL LISBOA
402 RICHWOOD AVE
GLOUCESTER CITY, NJ 08030

   *Plaintiff appearing pro se*

ASHLEY LAURA COSTELLO
STATE OF NEW JERSEY
OFFICE OF THE ATTORNEY GENERAL
DIVISION OF LAW
25 MARKET STREET
7TH FLOOR - WEST WING
TRENTON, NJ 08625

   *On behalf of Defendants*

**HILLMAN, District Judge**

    This matter concerns constitutional claims by Plaintiff, Angel Lisboa, who is proceeding pro se,[1] arising out of past and

---

[1] The Court granted Plaintiff's application to proceed without prepayment of fees pursuant to 28 U.S.C. § 1915(a)(1), and

1

ongoing child custody proceedings in New Jersey state family court.  Defendants[2] have moved to dismiss all claims in Plaintiff's complaint.  For the reasons expressed below, the Court will grant Defendants' motion.

## BACKGROUND

Based on the allegations in Plaintiff's complaint and documents attached to his complaint, it appears that Plaintiff

---

directed that service would be performed, without cost to Plaintiff, by the U.S. Marshal.  (Docket No. 2.)

[2] Although it appears that service was effected on Defendant NJ Family Care at an enrollment location in Westmont, New Jersey (Docket No. 7), no appearance of counsel has been entered for NJ Family Care.  To the extent that NJ Family Care is an entity capable of being sued, cf. N.J.A.C. 10:78-1.3 ("The NJ FamilyCare program is under the supervision of the Division of Medical Assistance and Health Services."), and service at one of the many enrollment centers in the state was proper, see www.njfamilycare.org/need_help.aspx, Plaintiff's claims against NJ Family Care will be dismissed for the same reasons the Court will dismiss Plaintiff's claims against the other Defendants. See Ball v. Famiglio, 726 F.3d 448, 452 (3d Cir. 2013) (explaining that the screening provisions of the IFP statute, 28 U.S.C. § 1915(a)(1), require a federal court to dismiss an action *sua sponte* if, among other things, the action is frivolous or malicious, or if it fails to comply with the proper pleading standards); Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 244 (3d Cir. 2013) (explaining that pro se litigants are afforded greater leeway in the interpretation of their pleadings, and they must receive notice "when a court acts on its own in a way that significantly alters a pro se litigant's rights," but there are limits to the procedural flexibility: "For example, pro se litigants still must allege sufficient facts in their complaints to support a claim.  And they still must serve process on the correct defendants.  At the end of the day, they cannot flout procedural rules - they must abide by the same rules that apply to all other litigants.").

2

is the father of four daughters who are currently in the custody of Defendant New Jersey Division of Child Protection and Permanency (CP&P). Previously, the girls were in the custody of their mother while Plaintiff was incarcerated from 2012 through November 2015, and they remained in her custody until May 2017 when CP&P removed them from their mother's care due to neglect.

Plaintiff relates that in May 2017 he met with CP&P caseworkers in a parking lot while the girls were being treated at a hospital for a severe case of scabies. Plaintiff claims that the caseworkers stated the only way Plaintiff could obtain custody of his daughters was to sign documents agreeing to his brother and girlfriend supervising him at all times. Plaintiff claims that he refused to sign the documents, but the caseworkers said if he did not, the girls would be placed in foster case. Plaintiff claims that he signed the documents under duress in order to obtain custody of his daughters.[3]

---

[3] Plaintiff has not asserted claims against the CP&P caseworkers, but the Court notes that caseworkers are protected by qualified immunity unless clearly established law puts them on notice that their conduct is a violation of the Constitution. Mammaro v. New Jersey Div. of Child Protection and Permanency, 814 F.3d 164, 171 (3d Cir. 2016) (explaining that CP&P caseworkers are entitled to qualified immunity because "[c]aseworkers investigating allegations of child abuse often must make difficult decisions based on imperfect information. Particularly when deciding whether to separate parent and child, a caseworker must weigh the rights of the parent against the rights of the child and the risk of abuse. We are not the first to note that the failure to act quickly and decisively in these

3

On April 10, 2018, CP&P removed the girls from Plaintiff's care. Plaintiff claims that several reasons were asserted for the girls' removal, including the loss of his job. Plaintiff asserts he lost his job due to absences caused by unnecessary and burdensome requirements imposed by CP&P such as drug testing and his decision to use doctors of his choice rather than through state-provided programs. He was also evicted from his apartment. Plaintiff refutes that he was neglecting his daughters, which was CP&P's ultimate basis for their removal. It appears that all four daughters are currently in foster care and under CP&P's custody.

Plaintiff has asserted constitutional claims for three events relative to the custody of his children: (1) the state court's refusal to provide him with a transcript for an October 10, 2017 family court hearing;[4] (2) the removal of his children from his custody on April 10, 2018; and (3) the loss of his own state-provided medical insurance when his daughters were removed from his custody in April 2018.

CP&P, along with Defendant Joseph Pizarro, whom Plaintiff

---

situations may have devastating consequences for vulnerable children").

[4] Plaintiff claims that he cannot defend himself against CP&P's allegations of child neglect without the court transcripts and other documents he has requested.

4

claims was the videotape and transcript coordinator who denied Plaintiff's October 10, 2017 transcript request, have moved to dismiss all of Plaintiff's claims on numerous bases, including sovereign immunity, absolute quasi-judicial immunity, and failure to state any cognizable claims. Plaintiff has not filed an opposition to Defendants' motion, but after Defendants filed their motion, Plaintiff filed a letter on the docket asking this Court to intervene in the ongoing state court custody case. (Docket No. 12.)

## DISCUSSION

### A. Subject matter jurisdiction

Plaintiff has brought claims pursuant to 42 U.S.C. § 1983 for violations of the U.S. Constitution. This Court has subject matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331.

### B. Standard for Motion to Dismiss

Defendants argue that Plaintiff's claims are absolutely barred by the doctrine of Eleventh Amendment sovereign immunity. As plead, Eleventh Amendment immunity is a challenge to this Court's subject matter jurisdiction and, therefore, is determined pursuant to Fed. R. Civ. P. 12(b)(1). Gould Elecs., Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000). Rule 12(b)(1) motions are either facial or factual challenges. CNA

v. United States, 535 F.3d 132, 140 (3d Cir. 2008). A facial attack concerns the sufficiency of the pleadings, whereas a factual attack is a dispute over the existence of certain jurisdictional facts alleged by the plaintiff. Id. (citing United States ex rel. Atkinson v. Pa. Shipbuilding Co., 473 F.3d 506, 514 (3d Cir. 2007)).

In deciding a motion that attacks the complaint on its face, the court must accept the allegations in the complaint as true. Mortensen, 549 F.2d at 891; Gould Elecs., 220 F.3d at 176 ("In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff.").

If the motion attacks the facts supporting jurisdiction, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Mortensen v. First Federal Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). The plaintiff will have the burden of proof that jurisdiction does in fact exist. Id.

Here, Defendants are making a facial attack that Plaintiff's claims are barred by sovereign immunity and,

therefore, the Court accepts the allegations in Plaintiff's complaint as true.

Defendants also argue that Plaintiff's claims against Pizarro are barred under the doctrine of quasi-judicial immunity, and otherwise fail to state any cognizable claims against all Defendants pursuant to Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim. Bogosian v. Gulf Oil Corp., 562 F.2d 434, 446 (3d Cir. 1977). However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."

Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1969 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail-in-the-coffin for the 'no set of facts' standard that applied to federal complaints before Twombly.").

**C. Analysis**

Plaintiff's claims must be dismissed pursuant to several well-established legal doctrines.

First, Plaintiff's claims against CP&P and Joseph Pizarro in his capacity as a court employee must be dismissed because they are entitled to sovereign immunity and absolute quasi-judicial immunity for their actions as alleged in Plaintiff's complaint. See Wilson v. The New Jersey Division of Child Protection and Permanency, 2016 WL 316800 at *5 (D.N.J. 2016) (citing cases) ("The Third Circuit has held that DYFS (now

8

DCP&P) is an arm of the state covered by New Jersey's sovereign immunity."); Dongon v. Banar, 363 F. App'x 153, 155–56 (3d Cir. 2010) (citing Gallas v. Supreme Court of Pennsylvania, 211 F.3d 760, 772–73 (3d Cir. 2000); Johnson v. State of N.J., 869 F. Supp. 289, 296–98 (D.N.J. 1994)) (finding that (1) "the state courts, its employees, and the judges are entitled to immunity under the Eleventh Amendment because they are part of the judicial branch of the state of New Jersey, and therefore considered 'arms' of the state"; and (2) that "any actions taken by those charged with the responsibility of carrying out a court's order would be barred by the doctrine of absolute quasi-judicial immunity"); Wilson, 2016 WL 316800 at *4 (citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100-101, (1984); Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess, 297 F.3d 310, 323 (3d Cir. 2002)) (explaining that the Eleventh Amendment has long been held to incorporate a more general principle of sovereign immunity that bars citizens from bringing suits for damages against any state in federal court, and this immunity had been extended to state agencies and departments and officials when the state is the real party in interest).

Second, in order to bring claims under 42 U.S.C. § 1983, a plaintiff must allege a violation of a right secured by the Constitution or laws of the United States, and that the alleged

deprivation was committed by a "person" acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). CP&P and Pizarro, acting in his official capacity, are not amenable to suit under § 1983 because they are not considered to be a "person" within the meaning of the statute. See id. at 65 ("[A] State is not a 'person' within the meaning of § 1983."); id. at 71 ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself."); Wilson, 2016 WL 316800 at *4 (finding that the state court's employees are not "persons" subject to liability under § 1983).

Third, the Court must abstain from interfering with Plaintiff's ongoing state court custody proceedings. "The Supreme Court has articulated a longstanding public policy against federal court interference with state court proceedings and instructs federal courts to refrain from taking any action in cases where the federal plaintiff has or had adequate redress in state proceedings." Dongon, 363 F. App'x at 156 (citing Younger v. Harris, 401 U.S. 37, 43 (1971)). Three requirements must be met before Younger abstention is appropriate: (1) there are ongoing state proceedings that are judicial in nature; (2)

the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims. Marran v. Marran, 376 F.3d 143, 154 (3d Cir. 2004) (citations omitted).

All three requirements are met in this matter. As to the first requirement, the claims in Plaintiff's complaint and the documents submitted with his complaint, as well as his most recent correspondence to the Court, all indicate that the state court proceedings are ongoing. For the third requirement, Plaintiff has complained about the actions of CP&P, which serves as the plaintiff in the state court proceedings, and there is no indication that Plaintiff cannot raise his claims against CP&P in state court. The same is true for Plaintiff's claims against Pizarro, who is a state court employee.

With regard to the second factor, the case law makes it abundantly clear that it is inappropriate for a federal court to interfere with the state's interest in administering its own family court. Dongon, 363 F. App'x at 156 (citing Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181, 192 (3d Cir. 2006)); Malhan v. Tillerson, 2018 WL 2427121, at *7 (D.N.J. 2018) ("[T]he Court is not permitted to interfere in accordance with the Younger abstention doctrine . . . . [T]he Court simply has no authority to interfere with the Family Court proceedings because important

state interests are implicated, and because there is an adequate opportunity to raise federal claims therein."); Gass v. DYFS Workers, 371 F. App'x 315, 315-16 (3d Cir. 2010) (affirming district court dismissal of claims asserted against state court judge, DYFS, DYFS officials, deputy attorneys general, and public defender attorney in underlying termination of parental rights action to the extent plaintiff challenged family court orders regarding custody of two minors); Johnson v. City of New York, 347 F. App'x 850, 851-52 (3d Cir. 2009) (affirming district court determination that claims were prohibited to the extent plaintiff sought review of family court decisions regarding emergency removal of children from his home); McKnight v. Baker, 244 F. App'x 442, 444-45 (3d Cir. 2007) (affirming district court finding that the court lacked jurisdiction to review § 1983 claims where crux of plaintiff's complaint was that defendants conspired to have the family court suspend his visitation rights with his daughter); McAllister v. Allegheny Cnty. Family Div., 128 F. App'x 901, 902 (3d Cir. 2005) (affirming district court dismissal of federal constitutional claims where plaintiff "plainly [sought] to void or overturn adverse rulings entered in the child-custody litigation" by state family court because such relief required "a finding that the state court ... made incorrect factual or legal

determinations"); Weber v. Mcgrogan, 2016 WL 3381233 at *8 (D.N.J. 2016) ("[T]he Third Circuit has held that custody proceedings implicate important state interests, and federal district courts should not interfere with the decisions of state family courts.").

Finally, to the extent that Plaintiff seeks redress for actions by Defendants in state court proceedings that are no longer ongoing, Plaintiff has failed to plead facts to overcome Defendants' immunities, or to fall outside of the Rooker-Feldman doctrine, or to otherwise articulate viable claims for relief. See Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess, 297 F.3d 310, 323 (3d Cir. 2002) (explaining that Eleventh Amendment immunity is subject to three exceptions: "(1) congressional abrogation, (2) waiver by the state, and (3) suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law"); Desi's Pizza, Inc. v. City of Wilkes-Barre, 321 F.3d 411, 421 (3d Cir. 2003) (quotations, citations, and internal edits omitted) (explaining that under the Rooker-Feldman doctrine, lower federal courts lack subject matter jurisdiction to engage in appellate review of state-court determinations or to evaluate constitutional claims that are inextricably intertwined with the state court's decision in a judicial proceeding, and a plaintiff's claim for

relief in a federal action is "inextricably intertwined" with an issue adjudicated by a state court under two circumstances: (1) when in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered, and (2) when the federal court must take action that would render the state court's judgment ineffectual); Drogon, 363 F. App'x at 156 (citing Gryger v. Burke, 334 U.S. 728, 731 (1948); Engle v. Isaac, 456 U.S. 107, 121 (1982)) ("To the extent that errors of state law have occurred, even if true, these claims do not amount to a denial of due process warranting federal court intervention."); N.J.S.A. 9:6-8.43 (Adjudication of Alleged Child Abuse or Neglect, Notice of Rights) ("The court shall advise the parent or guardian of his right to have an adjournment to retain counsel and consult with him. The court shall advise the respondent that if he is indigent, he may apply for an attorney through the Office of the Public Defender. In cases where the parent or guardian applies for an attorney through the Office of the Public Defender, the court may adjourn the case for a reasonable period of time for the parent or guardian to secure counsel; however, the adjournment shall not preclude the court from granting temporary relief as appropriate under the law. The court shall appoint a law guardian for the child as provided

by this act."); N.J.S.A. 9:6-8.10a ("All records of child abuse reports . . . shall be kept confidential and may be disclosed only under the circumstances expressly authorized . . . . If the department denies access to specific information on this basis, the requesting entity may seek disclosure through the Chancery Division of the Superior Court. . . . The department shall not release any information that would likely endanger the life, safety, or physical or emotional well-being of a child or the life or safety of any other person."); S.J. v. Division of Medical Assistance and Health Services, 44 A.3d 643, 645 (N.J. Super. Ct. App. Div. 2012) (explaining that NJ FamilyCare is "is a federal and state funded health insurance program created to help New Jersey's uninsured children and certain low-income parents and guardians to have affordable health coverage," and finding that a guardian's termination of benefits is an administrative decision entitled to substantial deference).

## CONCLUSION

All of Plaintiff's claims against Defendants must be dismissed as a matter of law for the numerous and separate reasons discussed above. Ordinarily, a civil rights plaintiff acting pro se should be granted leave to amend. However, an important exception to that rule exists and applies here. Given the nature of Plaintiff's claims and asserted facts, such an

effort would be futile. Accordingly, the Court will not afford Plaintiff leave to file an amended complaint. See Estelle v. Gamble, 429 U.S. 97, 107 (1976) (providing that even though pro se complaints, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," pro se litigants "must still plead the essential elements of [their] claim and [are] not excused from conforming to the standard rules of civil procedure"); Fletcher Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007) (stating that Third Circuit case law "supports the notion that in civil rights cases district courts must offer amendment irrespective of whether it is requested when dismissing a case for failure to state a claim unless doing so would be inequitable or futile"); Ball v. Famiglio, 726 F.3d 448, 452 (3d Cir. 2013) (explaining that the screening provisions of the IFP statute, 28 U.S.C. § 1915(a)(1), require a federal court to dismiss an action *sua sponte* if, among other things, the action is frivolous or malicious, or if it fails to comply with the proper pleading standards).

An appropriate Order will be entered.

Date: February 7, 2019          s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.